[Cite as *Ligon v. Winton Woods Park*, 2019-Ohio-1217.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SUSAN LIGON, | : | APPEAL NO. C-180073 |
| | | TRIAL NO. A-1505332 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| WINTON WOODS PARK, | : | |
| | | |
| GREAT PARKS OF HAMILTON COUNTY, | : | |
| | : | |
| and | | |
| | : | |
| BOARD OF PARK COMMISSIONERS OF HAMILTON COUNTY, OHIO, | : | |
| | | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 3, 2019

*Robbins, Kelly, Patterson & Tucker*, *Jarrod M. Mohler* and *Sean P. Mahaffey*, for Plaintiff-Appellant,

*Schroeder, Maundrell, Barbiere & Powers*, *Lawrence E. Barbiere* and *Kurt M. Irey*, for Defendants-Appellees.

**MYERS, Presiding Judge.**

{¶1}    Plaintiff-appellant Susan Ligon has appealed from the trial court's entry granting summary judgment to defendants-appellees Winton Woods Park, Great Parks of Hamilton County, and the Board of Park Commissioners of Hamilton County (collectively referred to as "Great Parks"), on Ligon's complaint for negligence.

{¶2}    In a single assignment of error, Ligon argues that the trial court's grant of summary judgment was in error.  We find her argument to be without merit and affirm the trial court's judgment.

### Factual and Procedural Background

{¶3}    Ligon was visiting her adult son, Stephen Ligon, at Winton Woods Park.  Stephen was on a camping trip in the park.  Ligon drove from Stephen's campsite to the park's laundry facility.  She suffered injury when she tripped and fell over a mat while walking on the sidewalk that led from the parking lot to the laundry facility.

{¶4}    Ligon sued Great Parks for negligence.  Her complaint included the following allegations:  that Great Parks had a duty to keep the sidewalk in repair and free of nuisance; that Great Parks had negligently failed to maintain the sidewalk and improperly placed the mat on the sidewalk; that Great Parks knew or should have known that placing the mat on the sidewalk was unsafe and that injuries were likely; that her fall was a direct result of the negligent failure of Great Parks to maintain the park and keep it reasonably safe and free from physical defects; that her fall was a

reasonably foreseeable consequence of Great Parks' negligence; and that she suffered serious injuries and incurred medical expenses and economic damages.

{¶5} Great Parks moved for summary judgment. The trial court granted Great Parks' motion after determining that the mat posed an open and obvious danger, thus negating any duty owed by Great Parks to Ligon.

### Standard of Review

{¶6} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

### Open and Obvious

{¶7} In a single assignment of error, Ligon argues that the trial court erred by granting Great Parks' motion for summary judgment. She contends that it was error to find that the mat posed an open and obvious danger.

{¶8} To succeed on a negligence claim, a plaintiff must establish that "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of duty." *Patterson v. Adleta, Inc.*, 1st Dist. Hamilton Nos. C-180015 and C-180026, 2018-Ohio-3896, ¶ 7, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶9} But "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 11, quoting *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus. This is because the open and obvious nature of the condition serves as a warning. *Martin v. Christ Hosp.*, 1st Dist. Hamilton No. C-060639, 2007-Ohio-2795, ¶ 13. An open and obvious danger is one that is not "hidden, concealed from view, or undiscoverable upon ordinary inspection." *Esterman v. Speedway LLC*, 1st Dist. Hamilton No. C-140287, 2015-Ohio-659, ¶ 7, quoting *Thompson v. Ohio State Univ. Physicians, Inc.,* 10th Dist. Franklin No. 10AP-612, 2011-Ohio-2270, ¶ 12. It is reasonably expected that a person will discover such dangers and protect against them. *Id.* at ¶ 6. A court uses an objective standard to determine whether a danger is open and obvious, and "[t]he fact that a particular appellant himself or herself is not aware of the hazard is not dispositive of the issue." *Williams v. Strand Theatre & Cultural Arts Assn., Inc.*, 5th Dist. Delaware No. 18 CAE 06 0042, 2019-Ohio-95, ¶ 24.

{¶10} Typically, whether a danger is open and obvious is a question of law. *McLaughlin v. Andy's Coin Laundries, LLC*, 2018-Ohio-1798, 112 N.E.3d 57, ¶ 15 (1st Dist.). But the presence of attendant circumstances can create an issue of fact as to whether a danger is open and obvious. *Id.* Attendant circumstances are "distractions that contribute to an injury by diverting the attention of the injured party and reduce the degree of care an ordinary person would exercise at the time." *Id.*, quoting *Galinari v. Koop*, 12th Dist. Clermont No. CA2006-10-086, 2007-Ohio-4540, ¶ 21.

{¶11} In a deposition, Ligon testified that she had driven from her son's campsite to the parking lot of the laundry facility. As she walked along the sidewalk leading to the facility entrance, she tripped on a mat that was lying on the sidewalk. She had first noticed the mat when she exited from her vehicle, but from that distance she had not noticed that any part of the mat was raised. Ligon described the mat as being black and approximately five feet wide. As she had approached the mat, Ligon had been looking at the trees and her surroundings, but she explained that at the moment she fell, she "was looking at the mat stepping on it when I came right up on it."

{¶12} She testified that she first stepped onto the mat as she turned a corner on the sidewalk, intending to walk on the mat to get to the laundry room door. Ligon stepped onto the mat with her right foot without incident. But when she stepped with her left foot she "felt something, [her] foot was right underneath the mat." In more detail, she explained that "I remember looking down at the mat but then when my left foot—as I was going around the corner and then my left foot just went underneath the mat and as soon as I felt it—when I stepped down I felt it, my left foot felt something with it, and seen it was underneath the mat." Ligon believed that her left foot had gotten caught in flaps that were sticking up on the mat. She testified that she had not seen the flaps as she approached. She described the flaps as forming a "tepee" or hump in the mat, which her foot slid underneath. She further testified that what she described as a large garbage can or ashtray blocked her view of the hump in the mat. Using a photograph of the scene that depicted the garbage can or ashtray, she drew an outline of the mat and the location of the hump.

5

{¶13} In determining that the mat posed an open and obvious danger, the trial court made the following statement: "Plaintiff visited the laundry facility at the Winton Woods campground. Upon exiting her vehicle she noticed a black mat lying on the concrete sidewalk. Plaintiff continued into the laundry facility. Upon exiting, while carrying a small bag of laundry, Plaintiff stepped onto the black mat." It further found that Ligon "noticed that black mat before entering the laundry facility, and once again after exiting." The court then held that a person exercising ordinary care would have observed any danger the mat presented.

{¶14} The trial court incorrectly also found that Ligon had twice encountered the black mat upon which she tripped. The record clearly indicates that Ligon tripped on the mat the first time she encountered it. But despite the trial court's reliance on this inaccurate fact when reaching its conclusion, we nonetheless find that it did not err in determining that any danger posed by the mat was open and obvious.

{¶15} The mat was relatively large and its black color distinguished it from the sidewalk on which it lay. Ligon noticed the mat as she approached and as she stepped on it. And even if Ligon had not observed the hump, we find, based on Ligon's own sketch and testimony, that it would have been visible to a reasonable person and that the garbage can or ashtray did not rise to the level of an attendant circumstance sufficient to create an issue of fact. *See Esterman*, 1st Dist. Hamilton No. C-140287, 2015-Ohio-659, at ¶ 13. We hold that the mat posed an open and obvious danger and, consequently, that Great Parks owed Ligon no duty to warn.

6

{¶16} Because the mat posed an open and obvious danger, the trial court did not err in granting summary judgment to Great Parks. Ligon's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.